22-2172. Good morning, Councilor Cahill. You have reserved three minutes for your vote, correct? Yes. Good morning, and may it please the Court. I'd like to begin by jumping into the Board's motivation to combine in this case. We believe that the Board both failed to support its motivation to combine with substantial evidence and made an error of law in doing that analysis. So how does the motivation to combine work in this case? Well, like IDT's patent, Gardner, the primary reference, describes a PCR method for amplifying target amino acid sequences. And those amino acid sequences are targeted with targeted primer pairs. And those targets overlap. And it's important that they overlap because in the area of the overlap, there is a danger of creating something that the patent claims call the third amplicon. It's also called a mini-amplicon, a short amplicon, but it's the overlap region. And when those amplicons, the amplified regions, appear, they dominate the reaction. And you don't amplify your targets. Instead, you just get these short amplicons that don't mean anything. Now Gardner, and we explain this in the patent, sort of how Gardner works, Gardner addresses this problem by separating all the overlapping targets into two separate reactions. That's how Gardner does it. The Board says that a person of ordinary skill in the art would be motivated to run Gardner's reaction in a single reaction vessel. And relies on Gardner for that purpose. But everyone agrees, then you have this problem of the third amplicon when you do that. And so how do you address that? Well, the Board goes on. You have the problem of what? The third amplicon. Okay. The Board goes on and provides a second part of the motivation. And that is that Gardner also mentions one could run a step to remove the short amplicons from the reaction. And thereby avoid the need to. That seems to be a pretty clear invitation to a proposal to combine. Even accepting the Board's work here, there's no evidence. The next step is the Board says, and Lau, the secondary reference, provides such a step. And the problem is that Lau doesn't provide such a step. So the motivation to add Lau to Gardner fails. And the reason why Lau fails in this regard is when we talk about short amplicons, Gardner and Lau are talking about different sizes. Do you agree that Gardner discloses at least some amplicons that are within Lau's size limitations? Yes. So Gardner says in his Gardner's design rationale for the primers, he says that the overlaps have to be a certain size. They have to be big. 40 to 80 base pairs. That's not enough. It's got to be bigger than that. And so we ask the question, well, how much bigger? And we looked at Gardner's example. And 30 out of 36 overlap regions were bigger than 100 base pairs. So when we say bigger, we're talking about 100 base pairs. Larger than 100 base pairs. Some of them are more than 200 base pairs. And the problem when you say, well, the Board does this, when you look at only the small ones and say, well, Lau would take those out, the first part of the motivation to run the reaction in a single tube, you need to get them all. Otherwise, you don't get it. You need to do what? You need to get them all. You need to get all of those overlap amplicons. Otherwise, you can't run it in a single vessel. Because what will happen is, for a few of the overlapping targets, you'll get your targets. But for the vast majority of your overlapping targets, you won't. You'll get the third amplicon. You'll get the overlap region. It will dominate the reaction for those targets. And you won't get those targets. So the idea that you would run Gardner in a single... The third amplicon you're talking about, that's a microamplicon. We don't call it micro, but it is short. We call it in the patent a mini-amplicon, but it's just the overlapping region. And so if you take the Board's position that we don't need to get rid of all of them, then its motivation doesn't work. Because you still have, for Gardner's example, the vast majority of the targets won't get amplified. It won't run in one vessel. It won't run correctly. Are you contending that there can be no small amplicons at all? I feel like that's what I'm hearing, but tell me if I'm asking what you're describing today. In order to meet the Board's motivation, this two-part motivation, that you run Gardner's reaction in one vessel, and that you get there by running a step to take out the small amplicons, if you don't get them all, then in that one vessel you won't amplify all your targets. You'll amplify some of your targets, but not others. And Gardner is left facing the problem that Gardner was facing all along, and solved by separating the overlapping targets. But Lau teaches the problem that Gardner faced. So Lau teaches a process for modifying the primers to remove some small amplicons. And Lau is very clear that his modification works at 100 base pairs and below. Above 100 base pairs, Lau preferentially amplifies. And so for those bigger base pairs, the bigger amplicons and overlap amplicons in Gardner, Lau would amplify those, and you wouldn't get your targets. I thought in reading the briefs and the materials submitted, that really the concern was more with having the small or many amplicons dominate the reaction, as opposed to needing to eliminate them all. Am I misunderstanding what was previously presented? So we don't need the many amplicons to dominate the reaction. We want to stop the many amplicons from dominating. Yes, but I thought the concern was stopping dominating. I apologize. I thought the concern was stopping dominating, as opposed to full-on elimination. I feel like those are two different things that you're saying. So thank you for asking that question. Let's back up and look at what I think one of the problems with the arguments are. So when we look at the amplicons in Gardner, there are 36 different overlaps. Each one of those is a different third amplicon. And I don't mean to suggest that for each individual overlap, you have to get rid of every single one of them. That's not what I'm saying. Okay, because when you used the word all, that implied to me get rid of all of them. Okay, but you do need to reduce them, stop them from dominating the reaction for all 36, or you can't run them in the same vessel. You won't get your targets. You said that Lau doesn't allow for that, but that's not what the board didn't make a finding on that. I know that's your argument, but they didn't say that. What the board said about Lau that we disagree with is Lau provides such a step, and that such a step takes out the small amplicons from the Gardners. They didn't make a finding on a sufficient number. They didn't. So the question is, you want us to construe the claim to mean that all amplicons have to be removed, eliminated. Well, for the purposes of motivation, we don't think we need to talk about the claim construction at all. Yes, we're enabling this motivation, but really you're making a claim construction argument here. I'm happy to talk about the claim construction, but I don't think that's the argument here. So, for example, the intelligent biosystems case, I think it has facts just like these. It doesn't depend on claim construction. It's a pure failure of evidence for motivation. And what happened there was it was another PCR reaction case, and there was a motivation to add, I believe it was an azetomethyl group, for the purpose of improving the efficiency and reliability of the PCR reaction. And what actually happened was it turns out that for doing that, to achieve that motivation, an important aspect is the part that you add, it has to perform quantitative deblocking. And it turns out the evidence showed that… We're running out of time. I want to make sure that I understand. Is it your argument that the claims do not teach removal of all amplicons? The claims do not teach removal of all amplicons? It boils down to the construction issue. So, and the claims are a little different. They're the same, but they're different. So the claims actually say you put all this stuff in one reaction. There's an overlap. It produces an overlap amplicon. And there's a way to treat it so that that third amplicon, the overlap amplicon, forms a stable secondary structure. And that structure is not further amplified. Do the claims require removal of all amplicons? In the sense that it uses comprising language, no. There could be other things in the reaction, and it would still fall within the claims. Did you make a claim construction argument to the PTAB concerning whether Claim 1 would require all short amplicons to be removed or just some of them? Was that ever made to the PTAB? No, and remember, we're not arguing for one given third amplicon that they all need to be removed. The court was correct about that. It just needs to be reduced to a level that it doesn't dominate. We didn't make a claim construction argument on this topic to the board because we thought the ordinary meaning sufficed. That when it forms a stable secondary structure, stable means stable. So it isn't further amplified because it is a stable structure. And the board did something different than that. And that's why we have a problem with them there. And that impacts the reasonable expectation of success argument. But I don't think it impacts the motivation argument. The evidence doesn't support adding Lau to Gardner because Lau will not allow Gardner to run in a single PCR reaction. And that is the motivation that the board applied. The evidence isn't there to support that. And I say that with such confidence because IDT's expert did this analysis, looked at Gardner, carefully calculated the size of the overlaps, and provided that analysis. Pilar's expert admitted on reexamination that she never considered the size of the overlaps. So we think the evidence only goes one way here. You're in your rebuttal time, Your Honor. Thank you. Mr. Matsui, is that correct? That's correct, yes, Your Honor. May it please the court, Brian Matsui for Pilar. Substantial evidence supports the board's findings that the claims would have been obvious. For reasonable expectation of success, IDT starts with a claim construction argument that it never made and demands more than its patent requires. And for motivation, IDT pivots to an argument that it made when contesting reasonable expectation of success and asks the court to ignore findings or take undisputed facts that were found against it. So I think the best place to start is motivation because that's where IDT spent most of its time arguing. The first issue I'd like to just point out is that they raised this issue really as motivation, as reasonable expectation of success. They had one sentence in their patent owner response at Appendix 447, which said, as discussed in detail below in Section 60, the record evidence demonstrates that the undesired overlap amplicons of Garner would have been too large for elimination by Lau's method. And Section 60 is reasonable expectation of success. Sure. It's Appendix 447. And it's at the top, the first full sentence in there. And that's where they basically just cross-reference their reasonable expectation of success argument. And so that's why I think when we're looking at the board's decision, we're looking at reasonable expectation of success for this pivoted motivation argument that they're now presenting to this court. Judge Cunningham, I think that your point about the fact that even if you take sort of the most restrictive view of Lau, which is how the board described it, they still found that six of the 36 short amplicons would be removed. And that finding supports motivation right there because it's showing that a person of ordinary skill in the art would look at Garner's invitation and it would see that even if you take this very restrictive view of Lau, you're still going to remove the third amplicon. And Garner's example that they're pointing to, that's not Garner. Garner is not an article about the genome sequence for this specific gene. It's a model. It explains that this is a model we're going to use. And the example has 53 different primers in it. And those 53 different primers create all these different amplicons. Garner doesn't require you to have 53 primers. It just wants a multiplex reaction. And that only requires four primers, which happens to be the number of primers that the claim requires. If we look at claim one, it requires a first forward primer, a second forward primer, a first reverse primer, and a second reverse primer. And from those primers, you're going to get three amplicons. A first amplicon, a second amplicon, and a third amplicon. So a person of ordinary skill in the art trying to achieve the claim of invention would not have to use 53 primers in Garner's specific example. What we have here really is bodily incorporation. We have a patent owner taking... A person would have to consider the size limitation elements that are cited in Lau, correct? If the board actually found that that was, the board found that there was a teaching about 100 base pairs. But if we look at Lau itself, which, again, the board said this was the most restrictive reading of Lau. If we look at Lau itself, for example, the 100 base pair example comes from appendix 966 in paragraph 73. And it says in the middle of that paragraph, as noted below, in some embodiments, insert sections of at least 100 base pair are generally used. And so it's just talking about some embodiments. And then a little further down... What did the large expert testify in this regard? Well, we didn't testify about amplicon size because that's unnecessary. The teaching of Lau, which the board found in appendix 22. Appendix 22. It says, first, as petitioner notes, this is the bottom of appendix 22. First, as petitioner notes, Lau teaches that under its method, shorter amplicons will self-hybridize faster than longer amplicons, and that shorter amplicons thus take themselves out of the reaction. And that's the point here, is that you have a teaching... I think only if you're looking at just combining the specific embodiment of Lau with the specific example of Gardner. And that's what this court has said, like in the axionics decision that we submitted in the 28-J letter, is that you don't do that. You don't try to see if, by combining a first reference with a second reference, you're necessarily going to achieve the specific goal of the first reference. You're basing it upon what the claims require. And the claims require here only four primers and three amplicons. And the example in Gardner, which is just a specific example of the method, has 53 primers and it has 36 overlapping amplicons. None of that is required by the claims. In other words, if you were to take Gardner's method, which is what the authors were trying to show, this is the computational method they have to design primers. You could take those six amplicons and all the primers that basically form them and run that in a single reaction. But if you just use Gardner's method alone, you would have to use multiple reactions. And so that's why, even if we take the most narrow view of the art, so we're just incorporating one example into one embodiment, you still would have motivation from the teachings of these references that you would want to actually combine them, given Gardner's express invitation, and Lau's teaching that you could actually eliminate shorter amplicons. So I'm going to ask you the same question I asked the other side. Do the claims here require the removal of all amplicons? No. All they require is the third amplicon. We look at the claim language itself at claim one. It just requires the removal of some, not all. That's correct. How do you know if you don't look at the size, if you don't consider the size of the amplicon? So I think that there's nothing in the claims themselves that require a specific size that gets removed. It just says the third amplicon is the amplicon that's removed. And it only requires, again, three amplicons here, not 36 like Gardner's method requires. And so I think what you're talking about, if you look at the claims themselves, they require the third amplicon. And we say the third amplicon is a category of amplicons, then yes, it requires the removal of basically all those amplicons. But that doesn't mean that if there were all these additional other amplicons that were in there, that those would also have to be removed because the claim doesn't require that. The claim just says there's a third amplicon. So I think that that's perhaps the debate that's going on right now.  to require more primers or more third amplicons than the claims actually state because they only require one third amplicon and four primers. Whereas if we look at Gardner's method, it's 53 primers and 36 amplicons. I ask these questions because what's important to me here with respect to this discussion we're having, the board's obviousness determination is supported by substantial evidence and if there's no discussion as to that by the board, then I begin to have a hard time agreeing with that. Well, so I think that, Your Honor, I think that the board did have a discussion on that at appendix 23 where it discusses, this is where it discusses the six of the 36. This is page 23, right? Page 23 where it says that this is where the board basically says that even under this restrictive reading of Lau, 30 of the 36 exceed the 100 nucleotides, but six don't. And so the board made this finding. When you say 100 nucleotides, you're referring to size. 100 nucleotides. And I think that that's the argument that IDT is making is that 100 nucleotides is a cutoff in Lau, which that's not supported by any evidence because, again, if you look at appendix 966 at paragraph 71, it says, remember the 101 said in some embodiments. Now in appendix 96 it says, at paragraph 71, in some embodiments an insert that is short enough to reduce the likelihood that amplification will occur is between 1 and 200 nucleotides in length. So in this different embodiment it's talking about a different size, 200 nucleotides. I think the point, though, is, Your Honor, just to take a step back, this whole argument that they're making based upon amplicon size depends upon taking only narrow embodiments from the prior art references and putting them together. Whereas in obviousness analysis, and the one that we put forward and the board addressed, requires you to look at the teachings. And the teachings of Gardner are that you would have these multiplex reactions, they would have a third amplicon, and that you would then have a method that could reduce the third amplicon, which is Lau. Now, that doesn't mean that you need to stitch the two together from their specific examples, because there are many examples that you could come up using Gardner's method that would meet even this 100 base pair requirement. For example, if it sounds now you're in for a reasonable expectation of success. Well, I mean, that's how they just find out. I want you to fully address that. Certainly. I mean, I think that the two issues are very tethered together here, just the way that it was presented to the board, and then the board then addressed it. I mean, they addressed this issue as reasonable expectation of success precisely because of the way that IDT framed it, by just cross-referencing reasonable expectation of success. But on that, again, we're still in the situation where even if you look at the more narrow examples, you would have 6 of the 36 overlapping amplicons that still would be less efficiently amplified. But, again, I think that that's the wrong analysis, and I think that at Appendix 22, the board was recognizing more the teachings of Lau, which taught that there was short amplicons that would be removed. I would just like to also note at Gardner, when it discusses this, when the other side says there's just like 100 nucleotide cutoff for Gardner, they mentioned that it's 40 to 80, and that's at Appendix 1002 in the right-hand column. It says that amplicons are allowed from anywhere in each region. Small overlaps, e.g., 40 to 80, do not leave much room to find good priming regions. And then it goes down and says, and consequently it may not be possible to find primers for all targets. When this happens, increasing the overlap and relaxing the primer specifications may be necessary. And so even Gardner itself is saying, 40 to 80 may not work, but you can still try it, and if it doesn't work, then you'd expand it. So there is no 100-amplicon cutoff in Gardner either. The only reason we get to the 100 amplicons is because we get to this specific example with respect to this one gene that Gardner put forward as an example. But that's not what Gardner is about. Gardner is about a model and how you would address these overlapping amplicons. What did the board say about reasonable expectations of success? The board found that once you get to the point that there are not, you don't have to remove all the short amplicons, because the claims don't require the removal of all short amplicons, then there is reasonable expectation of success. Because Lau teaches that these short amplicons, the third amplicon was self-hybridized and take itself out of the reaction. And then it looked at the example even of Gardner, and this is where it takes a restrictive reading of Lau and takes the Gardner example and says, you still remove six of the 36, and so you still would be removing some of the short amplicons. So you're again pointing to appendix page 23 for that. Yes, that's how this issue was completely framed to the board. So I don't think the board can be faulted for basically addressing this issue as reasonable expectations of success. And in this court precedent, like the Intelligent Biosystems case, of course, any findings that are made for reasonable expectation of success can still count for motivation and vice versa. Do you believe that opposing counsel is making a claim construction argument? It sounded like they might have backed away from that in their argument today, but I want to know your take on that. I think that they may have a new claim construction argument today that came up. I think the claim construction argument now today may be that the third amplicon doesn't mean the third amplicon from the first primer, the second primer, the first fourth, second reverse, but it means that actually our method requires all these primers and all these different third amplicons. And so I think that that may be the claim construction argument that they're making, that our method requires not three amplicons, but 36 amplicons. But there's nothing in the claim language that would support that at all. And I see my time has expired. We would ask the court to affirm. Thank you, counsel. Mr. Kagan, we're going to restore you back to three minutes. Thank you. A couple of things that I want to take up. One thing I want to point out is that Mr. Matsui had mentioned a 28J letter. We filed a response to that letter this week and we think that response is important and we hope the court reads it before coming to a conclusion in this case. And it also addresses this issue of the 200 base pair citation from Lau because they raised that footnote in their letter and we couldn't find it anywhere in their briefing. Now, this was raised below and it was vigorously attacked by our expert and raising it now without the benefit of briefing leaves out all of that context as to why the 200 number is the wrong one to look at. So please don't accept that without looking deeper. One thing that I think is getting confused here is I stood up and started talking about motivation to combine. Our claim construction issue is on the reasonable expectation of success error. But you're not making a claim construction issue. I mean, you are, but you didn't know and you can't make a claim construction issue before us. Well, Your Honor, one point I want to make is that our motivation to combine argument does not depend on any claim construction. We say the motivation fails because the board includes in its motivation must run in a single reaction. And a person of ordinary skill in the art would not run I mean, fine, call it an example. That example in Gardner. A person of ordinary skill in the art would not run that in a single reaction unless they could stop all 36 overlap amplicons from dominating the reaction. Otherwise, Gardner wouldn't get Gardner's targets. He just wouldn't get them. And a person of ordinary skill would understand that and wouldn't make that combination. That's not a claim construction argument. That's an evidence argument. On claim construction... I guess what you're pointing out is that Gardner deals with a standard PCR and now deals with a multiplex PCR? Well, multiplex just means more than one in a given reaction. So Gardner takes all of his and divides them into two so that there are no overlaps. Both of those are multiplex, but they're not a single reaction containing all of them. In the board's motivation expressly, the board says the motivation is to run Gardner in one reaction. And you can't run Gardner in one reaction unless you address all 36 overlaps. And Lau doesn't do that. And a person of ordinary skill in the art of paying attention would know that. That's what we think the failure of evidence is. And that's not a claim construction issue. Anything else? My time is up. Okay. We thank the parties for their arguments. And we'll take this case to the House.